A09A2381. MEDICAL OFFICE MANAGEMENT et al.
v. HARDEE.
(693 SE2d 103)

DOYLE, Judge.

Following our grant of their application for discretionary appeal, Medical Office Management and Southern Trust Insurance Com-

pany (collectively, the "employer") appeal from the superior court's order affirming in part and reversing in part the award of the appellate division of the Workers' Compensation Board. The employer contends that the appellate division's award for attendant care services rendered to the employee by her husband was contrary to the law and unsupported by the evidence and that the superior court erred in finding otherwise. The employer also claims that the superior court erred in affirming the appellate division's award of fees to the employee's attorney and in substituting its finding of fact for that of the appellate division as to the amount of the award. For the reasons set forth below, we affirm the superior court's order to the extent that it affirms the appellate division's award for attendant care services and attorney fees. We reverse that portion of the superior court's order finding that the appellate division was required to believe the testimony of Hardee's attorney as to the reasonable value of his fees and directing the employer to pay the attorney $12,500.

When reviewing awards in workers' compensation cases, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division of the State Board of Workers' Compensation. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding.[1]

So viewed, the record shows that the employee, Peggy Hardee, was struck in the head with a cash box during a robbery. Afterward, she had significant memory problems which caused her, among other things, to forget to turn off electrical appliances such as the stove, and she would often become dizzy and fall. Due to Hardee's continued mishaps related to her poor memory and vertigo, two medical doctors and a clinical psychologist recommended she receive as workers' compensation benefits eight hours a day of attendant care services, stating that the services were a medical necessity. One of the medical doctors subsequently requested that in light of Hardee's recurring falls and "cognitive impairment from her brain injury," she receive sixteen hours a day of attendant care services.

After her injury, Hardee's retired husband, Lewis Earl Hardee, provided continuing care for Hardee. Because of her vertigo and tendency to fall, Lewis would stay with Hardee "most of the time,"

---

[1] (Punctuation omitted.) *St. Joseph's Hosp. v. Ward*, 300 Ga. App. 845, 846 (686 SE2d 443) (2009).

and he would hold on to her "when we're walking anywhere." Lewis would check behind Hardee regularly to make sure that "things were unplugged and turned off." Lewis testified that he did not provide services to his wife because he expected to be paid, but because he loved his wife.

At Hardee's request, a hearing was held before an administrative law judge ("ALJ") to determine if the employer was required to provide Hardee with the services of a professional attendant care agency, if Lewis was entitled to be reimbursed for attendant care he provided to Hardee, and if the employer was liable for attorney fees. The ALJ concluded that Lewis was not entitled to reimbursement for the care he gave Hardee, but that she was entitled to eight hours per day, seven days a week, of direct physical attendant care. The ALJ denied Hardee's request for attorney fees.

On appeal of the ALJ's ruling, the appellate division agreed with the ALJ that Hardee was entitled to eight hours per day, seven days a week of attendant care services. The appellate division found that Lewis was entitled to reimbursement for the attendant care he personally provided to Hardee and concluded that the ALJ erred in finding otherwise. The appellate division also assessed $5,000 in attorney fees against the employer. Hardee and the employer both appealed to the superior court, which (i) affirmed the award for attendant care services provided by Lewis, and (ii) affirmed the appellate division's award of attorney fees to Hardee's counsel but reversed as to the amount of that award, finding that the attorney was entitled to $12,500 in fees.

1. The employer claims that the superior court erred in finding that Lewis was not barred from recovering for the services he rendered to Hardee. Specifically, the employer contends that the award was precluded as a matter of law under *Bituminous Cas. Corp. v. Wilbanks*[2] and its progeny.[3] We disagree.

OCGA § 34-9-200 (a) provides that

> [t]he employer shall furnish the employee entitled to benefits under this chapter such medical, surgical, and hospital care and other treatment, items, and services which are prescribed by a licensed physician . . . which in the judgment of the State Board of Workers' Compensation shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment.

---

[2] 60 Ga. App. 620 (4 SE2d 916) (1939).

[3] See *Interchange Village v. Clark*, 185 Ga. App. 97 (363 SE2d 350) (1987); *Ins. Co. of North America v. Money,* 152 Ga. App. 72 (262 SE2d 240) (1979); *Dept. of Human Resources v. Williams*, 130 Ga. App. 149 (202 SE2d 504) (1973).

As of July 1, 1985, an injured employee "is entitled to recover, as an element of her workers' compensation benefits, the cost of such non-medical, in-home attendant care as was prescribed by her physician."[4] There is no express prohibition in the Workers' Compensation Act[5] against the recovery by an employee of attendant care services provided by a family member, including a spouse. Nor does the employer show that a family member cannot provide attendant home care under the Board's rules and regulations.[6] For example, as found by the appellate division, the fee schedule promulgated by the Board pursuant to OCGA § 34-9-205 contemplates reimbursement for home health services provided by family members, and this Court has previously concluded that the Board did not abuse its discretion in requiring the employer to pay for family-provided attendant care per day.[7]

The employer argues that in light of *Bituminous*, Lewis was nevertheless not entitled to compensation for the services he rendered to Hardee. At issue in this 1939 decision was whether a wife's services in waiting on her injured husband while he was confined in bed at home was compensable under the then applicable workers' compensation law as "other treatment."[8] In our analysis, after noting that the wife was not a trained nurse and that her services were not of an unusual type or quality, we surveyed a number of authorities before coming to the conclusion that "[t]he term, 'other treatment' as used in the act . . . does not include the ordinary services of a wife furnished to her husband after his return from a hospital, but before he has fully recovered, as in the present case."[9]

Much of the reasoning underpinning *Bituminous* is no longer applicable. For example, *Bituminous* relies on the principle that in the absence of agreement otherwise, "the earnings and services of the wife belong to [the husband]"[10] and that "a husband is entitled to the services of his wife."[11] Most relevant to the actual holding in the case, the General Assembly has changed the law to require the employer to furnish to employees entitled to benefits "other treatment . . . *and services* which are prescribed by a licensed physi-

---

[4] *Interchange Village*, 185 Ga. App. at 99 (2).

[5] OCGA § 34-9-1 et seq.

[6] See Board Rule 203 (a), (d) (printed in appendix to Title 34, Official Code of Georgia Annotated (2008), pp. 997, 1000).

[7] See *Chatham County Dept. of Family &c. Svcs. v. Williams*, 221 Ga. App. 366, 367 (2) (471 SE2d 316) (1996).

[8] *Bituminous*, 60 Ga. App. at 620.

[9] Id. at 622.

[10] Id.

[11] (Punctuation omitted.) Id. at 621.

cian . . . ,"[12] and we have found the change was intended to expand benefits to include nonmedical, at-home attendant care services.[13] Thus, *Bituminous* has been superceded by changes in both domestic and workers' compensation law.[14]

In this case, after acknowledging *Bituminous* and other factors relied upon by the ALJ in denying reimbursement, including that Lewis lived in the home and did not suffer financial detriment on account of providing the services, the appellate division concluded that Lewis was nevertheless entitled to payment for attendant care. The appellate division found that Lewis was providing medically prescribed attendant care services and that the services were "reasonably required and appear[ed] likely to effect a cure, give relief, or restore the employee to suitable employment." The appellate division further found that Lewis provided the needed care after the employer refused to provide it, "despite the uncontroverted recommendations of the employee's physicians."

In light of the findings of the appellate division, which we conclude were supported by some evidence, Lewis was entitled to be reimbursed for the attendant care services he provided to Hardee. Although Lewis could be expected to assist his brain-damaged wife, he was not required to provide "all services which [he] is capable of rendering that [she] may require."[15] Simply put, Lewis was not legally required to provide the physician-prescribed attendant care; it was the employer's responsibility to do so under the Act. That the appellate division ordered the employer pay (consistent with the published rates for family-provided attendant care) for what the employer was legally required to provide does not, in our view, constitute legal error.

Nor can we conclude that the award was barred by the fact that the evidence tends to show that Lewis was motivated by love for his wife rather than expectation of compensation. Lewis did not intend

---

[12] (Emphasis supplied.) OCGA § 34-9-200 (a).

[13] See *Interchange Village*, 185 Ga. App. at 99 (1) (" 'services' as employed in existing OCGA § 34-9-200 (a) includes . . . non-medical, at-home attendant care").

[14] In *Interchange Village*, 185 Ga. App. at 100 (3), we arguably implied that *Bituminous* remains good law notwithstanding the changes in the Act to allow recovery as benefits of nonmedical, at-home attendant care services. Referencing *Bituminous* by comparison to the services rendered by an emancipated daughter, we noted that "[a]ppellee does not seek to recover from appellants the cost of any services which were performed by her spouse, by any one who was a member of her household at the time of her injury, or by any one having a legal rather than moral obligation to provide for her care." Id. The result in *Interchange Village* is not inconsistent with the appellate division's award in this case, and to the extent *Interchange Village* implies that in light of *Bituminous* a spouse or a member of an injured employee's household at the time of the injury may never recover for services provided to the employee, the holding in *Bituminous* was not that broad.

[15] *Dept. of Human Resources v. Williams*, 130 Ga. App. at 153 (2).

to gift his services to the employer, and although he may well have had a moral duty to assist his wife, "[a]n employer or insurance carrier is not a third party beneficiary to a marriage contract."[16] Furthermore, in the absence of a duty to pay in this case, not only would the employer be relieved of its statutory obligation to pay for the attendant care services, it would benefit from what the appellate division found to be its unreasonable delay in providing the services.

We do not suggest that "ordinary" services rendered by one spouse to another and not otherwise shown to be the responsibility of the employer under the Act, as was ultimately the case in *Bituminous*, is compensable. But given that the Act does not preclude reimbursement of attendant care services provided by a spouse, that the specific holding in *Bituminous* has been superceded in light of amendment to the Act, and that evidence supports the appellate division's conclusion that Lewis provided the medically prescribed attendant care services which the employer refused to provide, we conclude that the superior court did not err in affirming the appellate division's award to Hardee based on attendant care services rendered by Lewis.[17]

2. (a) The employer contends that the appellate division's award of attorney fees as affirmed by the superior court was contrary to law. We disagree.

"Upon a determination that proceedings have been brought, prosecuted, or defended in whole or in part without reasonable grounds, the administrative law judge or the board may assess the adverse attorney[ ] fee against the offending party."[18] The reasonableness of a defense to a proceeding "is an issue of fact for the board to determine. However, attorney fees may not be awarded where the matter was closely contested on reasonable grounds."[19]

The appellate division assessed $5,000 in attorney fees against the employer because "the defense of the claim for attendant care

---

[16] (Punctuation omitted.) *Henson v. Workmen's Compensation Appeals Bd.*, 27 Cal. App. 3d 452, 458 (I) (Ct. App. Cal. 1972). The employer argues that it should not be required to pay for the services of a "mere volunteer," but Lewis was not a voluntary actor who was under "no legal *or moral obligation*" to act. Compare *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124, 131 (2) (c) (553 SE2d 662) (2001).

[17] Our conclusion is consistent with the modern rule among state courts that "the fact that a spouse performs [services required to be furnished by the employer] should not inure to the benefit of the employer." Workers' compensation: recovery for home services provided by spouse, 67 ALR 4th 765, § I (2) (a) (2010). See, e.g., *Carbajal v. Indus. Comm. of Arizona*, 219 P3d 211, 215 (II) (b) (Ariz. 2009) (because the statute makes no distinction as to services provided by a spouse, "[t]he compensability of services inquiry should focus on the nature of the services provided, not on the identity of the service provider").

[18] OCGA § 34-9-108 (b) (1).

[19] (Citations and punctuation omitted.) *Brigmond v. Springhill Homes of Ga.*, 180 Ga. App. 875, 876 (350 SE2d 846) (1986).

was[ ] in part unreasonable in the delay in providing any attendant care until shortly before the hearing when two days per week were provided." The employer argues that because it prevailed on every claim and that its defense was reasonable the appellate division was not authorized to assess attorney fees.[20] But the employer did not prevail on every claim. As the ALJ noted, the employer "tacitly conceded" by the time of the June 19, 2008, hearing that some attendant care services were medically required. This followed the employer's denial, on December 7, 2007, of Hardee's request for attendant care notwithstanding that the employer was aware of the written recommendation of Hardee's three treating clinicians that she receive eight hours a day of aid and attendant services. And although the employer eventually agreed to provide two days a week of attendant care, the ALJ concluded that Hardee was entitled to attendant care eight hours per day, seven days a week. Given that OCGA § 34-9-108 (b) (1) provides for an award of attorney fees if the proceeding is defended "in part without reasonable grounds,"[21] and that the medical evidence was uncontroverted as to Hardee's need for attendant care at least seven days a week, eight hours, we conclude there is some evidence to support the appellate division's assessment of attorney fees against the employer.[22]

(b) After affirming the appellate division's assessment of attorney fees, the superior court reversed with regard to the amount awarded, finding that Hardee was entitled to $12,500 as a matter of law and ordering that such amount be paid by the employer. The employer contends this was error for two different reasons. First, the employer argues that Hardee presented no competent evidence of the reasonable value of her counsel's fees. We disagree. Second, the employer argues that the superior court erroneously substituted its findings of fact for that of the appellate division. We agree.

During the hearing, Hardee's attorney stated in his place that the reasonable value of his services was $12,500, and he described at length the various services he provided on behalf of his client. Employer's counsel declined to cross-examine him. As a rule, "[t]o authorize an award of attorney[ ] fees there must be evidence presented as to what is a reasonable value of the services which have

---

[20] See *City of Atlanta v. Spearman*, 209 Ga. App. 644, 646 (2) (434 SE2d 87) (1993) ("We are unaware of any cases in which the employer's defense prevailed and the employee was awarded attorney fees for an unreasonable defense").

[21] See *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 472 (3) (627 SE2d 90) (2006) (fee award authorized where defense was in part unreasonable).

[22] See *Capital Atlanta v. Carroll*, 213 Ga. App. 214, 216 (2) (444 SE2d 592) (1994) (employer's defense unreasonable in light of "the uncontroverted medical testimony was that there was no causal connection between the claimant's prior medical condition and his current injury").

been rendered by the attorney."[23] The evidence as to the reasonableness of the fee does not have to consist of hours devoted to the case, but "might only consist of an opinion of an expert," which may include the claimant's attorney.[24] The employer argues that Hardee's attorney never qualified himself as an attorney in the State of Georgia with sufficient experience to have an expert opinion on the reasonableness of attorney fees in the area and that this failure was fatal to the claim. That Hardee's counsel was a Georgia attorney, however, is evident from the record before the appellate division. In this context, "[i]t is well established that an attorney may testify as to the reasonableness of his own fee."[25] The appellate division could conclude that Hardee's counsel was competent to opine as to the reasonable value of his services.

As to that portion of the superior court's order holding that the appellate division was required to believe Hardee's attorney's testimony and directing that the employer therefore pay $12,500 in attorney fees, we find error. "If any evidence supports the appellate division's findings, those findings are binding and conclusive," and neither this Court nor the superior court may substitute itself as the fact finding body.[26] As a general rule, a trier of fact,

> in passing upon the testimony of an expert witness, as to the value of professional services, [is] not absolutely bound by his opinion, but may exercise [its] own judgment on the subject, taking into consideration the nature of the services, the time required to perform them, and all the attending circumstances.[27]

According to the appellate division, it based its fee award on "the record in the claim and hearing," indicating that its decision went beyond the attorney's valuation opinion, but that the amount of the award was based on the evidence of record,[28] which included testimony and documentation that showed various actions taken by Hardee's attorney, the nature and circumstances of which the appellate division was entitled to assess. Accordingly, we cannot say

---

[23] *Liberty Mut. Ins. Co. v. Kirkland*, 156 Ga. App. 576, 577 (2) (275 SE2d 152) (1980).

[24] Id.

[25] *Nichols v. Main Street Homes*, 244 Ga. App. 591, 593 (1) (536 SE2d 278) (2000). See *Altamaha Convalescent Center v. Godwin*, 137 Ga. App. 394, 397 (3) (224 SE2d 76) (1976) ("the plaintiff's attorney himself is competent to testify as to his opinion on reasonable fees").

[26] (Punctuation omitted.) *Korner v. Ed. Mgmt. Corp.*, 281 Ga. App. 322, 324 (635 SE2d 892) (2006).

[27] *Reserve Life Ins. Co. v. Gay*, 214 Ga. 2, 3 (102 SE2d 492) (1958).

[28] See *Copelan v. Burrell*, 174 Ga. App. 63, 64 (2) (329 SE2d 174) (1985) ("[t]he determination of [the] amount [of attorney fees under OCGA § 34-9-108] must be made in light of evidence presented").

that no evidence supports an award of fees in the amount of $5,000.[29] It follows that the superior court erred in reversing the appellate division as to the amount of its attorney fees award and requiring the employer to pay $12,500 to Hardee's attorney.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2010.

*Jones, Cork & Miller, Sharon H. Reeves*, for appellants.
*Phillip M. Eddings*, for appellee.

---

[29] See generally *Spencer v. Dupree*, 150 Ga. App. 474, 480 (8) (258 SE2d 229) (1979) (notwithstanding documentation of attorney fees in the amount of $3,666.25, trial court's award of $1,200 was within the range of the evidence).